UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

NANNETTE F. NICHOLSON,

    Plaintiff,

v.                                              Case No.:  6:23-cv-1111-DNF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## OPINION AND ORDER

Plaintiff Nannette F. Nicholson seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability and disability insurance benefits. The Commissioner filed the Transcript of the proceedings ("Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their positions. As explained below, the decision of the Commissioner is **REVERSED and REMANDED** under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I.    Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

    **A.    Social Security Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

### B. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo

standard. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the ALJ must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the ALJ finds the claimant's severe impairments do not meet or medically equal a listed impairment, then the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform past relevant work, the ALJ must determine at step five whether the claimant's RFC permits her to perform other work that exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove she is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

### C.  Procedural History

Plaintiff applied for a period of disability and disability insurance benefits on June 9, 2014, alleging disability beginning on December 18, 2009. (Tr. 98, 184-87). Plaintiff later amended the alleged onset date to January 12, 2012. (Tr. 1146). The application was denied initially and on reconsideration. (Tr. 98, 115). Plaintiff

requested a hearing, and on November 17, 2016, a hearing was held before Administrative Law Robert Droker. (Tr. 47-83). On December 22, 2016, ALJ Droker entered a decision finding Plaintiff not under a disability from December 18, 2009, through the last date insured of June 30, 2013. (Tr. 21-40). Plaintiff requested review of the decision, but the Appeals Council denied Plaintiff's request on November 15, 2017. (Tr. 1-5). Plaintiff appealed the decision to the District Court and on December 17, 2018, the Court reversed the decision and remanded the action for further administrative proceedings. (Tr. 812-13). On remand, the Appeals Counsel remanded the case to an administrative judge. (Tr. 828).

A second hearing was held on August 6, 2020 before ALJ Droker. (Tr. 747-72). On August 26, 2020, ALJ Droker entered a decision finding Plaintiff not under a disability from January 12, 2012, the amended alleged onset date, through June 30, 2013, the date last insured. (T. 718-38). Plaintiff appealed this decision to the District Court and on July 21, 2021, the Court reversed the decision and remanded the action for further administrative proceedings. (Tr. 1230-31). On October 25, 2021, the Appeals Council remanded the case to an administrative law judge. (Tr. 1237-38).

A third hearing was held on March 7, 2023 before ALJ Bernard Porter ("ALJ"). (Tr. 1175-1228). On April 12, 2023, the ALJ entered a decision finding Plaintiff not under a disability from January 12, 2012, the alleged onset date, through June 30, 2012, the date last insured. (Tr. 1146-65). Plaintiff filed a Complaint (Doc.

1) on June 13, 2023, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 18).

## D. Summary of ALJ's Decision

In this matter, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through June 30, 2013. (Tr. 1149). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of January 12, 2012, through her date last insured of June 30, 2013. (Tr. 1149). At step two, the ALJ found that through the date last insured, Plaintiff had the following severe impairments: "gastroesophageal reflux disease (GERD), irritable bowel syndrome (IBS), depressive disorder, anxiety disorder, fibromyalgia, migraine headaches, colitis, lumbago, and cervicalgia." (Tr. 1149). At step three, the ALJ found that through the date last insured Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (Tr. 1150).

Before proceeding to step four, the ALJ found that through the date last insured, Plaintiff had the following RFC:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 [C.F.R. §] 404.1567(b) except the

>claimant required a sit or stand option that allowed for a change of position at least every 30 minutes which was a brief positional change lasting no more than 3 minutes at a time where the claimant remained at the workstation during the positional change. The claimant could push/pull as much as she could lift/carry. She was capable of frequent overhead reaching. The claimant could never climb ladders and scaffolds or crawl; occasionally climb ramps and stairs and kneel; and frequently balance, stoop, and crouch. The claimant needed to avoid unprotected heights, extreme cold and extreme heat. She was limited to routine and repetitive tasks. She could tolerate frequent interaction with supervisors and coworkers and occasional interaction with the public. The claimant would be off tasks up to 10% of the 8-hour workday.

(Tr. 1153).

At step four, the ALJ determined that through the date last insured, Plaintiff was unable to perform any past relevant work as a legal secretary, administrative assistant, or customer service clerk. (Tr. 1163). At step five, the ALJ found that through the date last insured and considering Plaintiff's age (52 years old on the date last insured), education (at least high school), work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. (Tr. 1163-64). Specifically, the vocational expert testified that through the date last insured, a person with Plaintiff's limitations could perform such occupations as:

(1) Marker, DOT 209.587-034,[1] light, SVP 2

(2) Routing clerk, DOT 222.687-022, light, SVP 2

---

[1] DOT refers to the *Dictionary of Occupational Titles*.

  (3) Router, DOT 222.587-038, light, SVP 2

(Tr. 1164). The ALJ concluded that Plaintiff was not under a disability from January 12, 2012, the alleged onset date, through June 30, 2013, the date last insured. (Tr. 1164).

## II. Analysis

On appeal, Plaintiff raises three issues:

(1) Whether the Commissioner failed to sustain his burden of proof at step five of the sequential evaluations process as it relates to the hypotheticals posed to the vocational expert;

(2) Whether the Commissioner once again failed to sustain his burden of proof at step five of the sequential evaluation process as it relates to the number of jobs available in the national economy; and

(3) Whether the ALJ failed to comply with the Appeals Council's Remand Order.

(Doc. 20, p. 5, 9, 10).

### A. Hypotheticals to the Vocational Expert

Plaintiff argues that the ALJ included limitations in the RFC that were not reflected in the hypothetical questions to the vocational expert and thus remand is warranted. (Doc. 20, p. 7). Plaintiff contends that the RFC limited Plaintiff to occasional interaction with the public, yet the hypotheticals to the vocational expert limited Plaintiff to frequent interaction with the general public. (Doc. 20, p. 6-7).[2]

---

[2] "Occasionally" means occurring from very little to up to one-third of the time. SSR 83-10, *5, 1983 WL 31251. Whereas "frequent" means occurring from one-third to two third of the time. *Id.* at *6.

The Commissioner acknowledged this discrepancy, but argues that in the jobs identified by the vocational expert "talking is not present and taking instructions and helping is not a significant part of the job." (Doc. 22, p. 5). The Commissioner then reasons that these three jobs would not require more than occasional interaction with the public, and therefore any error is harmless. (Doc. 22, p. 5). Without an explanation from a vocational expert as to the level of interaction with the public, the error is not harmless.

At step five of the sequential evaluation, the ALJ must determine whether jobs exist in significant numbers in the national economy that a plaintiff can perform. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011). To make this determination, an ALJ may obtain the testimony of a vocational expert. *Id*. For the vocational expert's opinion to constitute substantial evidence, "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Id.* (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002)). "If the ALJ presents the vocational expert with incomplete hypothetical questions, the vocational expert's testimony will not constitute substantial evidence." *Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x 948, 950 (11th Cir. 2013). But an ALJ is not required to include findings in the hypothetical that the ALJ found to be unsupported by the record. *Lee v. Comm'r of Soc. Sec.*, 448 F. App'x 952, 953 (11th Cir. 2011) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004)).

In the hypotheticals to the vocational expert, the ALJ limited Plaintiff to "no more than frequent interaction with supervisors, coworkers, and the general public." (Tr. 1220). With this limitation as well as others, the vocational expert testified that an individual with these limitations could perform the jobs of marker, routing clerk, and router. (Tr. 1221). In the decision, the ALJ limited Plaintiff to, among other things, tolerating only "frequent interaction with supervisors and coworkers and occasional interaction with the public." (Tr. 1153). Without any discussion or explanation for the discrepancy between the hypotheticals to the vocational expert and the RFC assessment, the ALJ then relied on the vocational expert's testimony to determine that an individual with Plaintiff's limitations could perform the jobs of marker, routing clerk, and router. (Tr. 1164). While the Commissioner claims this error is harmless, the Court hesitates to substitute its judgment for that of a vocational expert to determine whether the three listed jobs allow for only occasional interaction with the public. With this error, the vocational expert's testimony did not constitute substantial evidence and the ALJ erred in relying on it. Thus, remand is warranted as to this issue.

### B.   Number of Jobs in the National Economy

Plaintiff argues that the ALJ erred in relying on the vocational expert's testimony about the number of jobs in the national economy. (Doc. 20, p. 9). Plaintiff claims that the vocational expert testified about the job numbers available within the

past two years from the date of the hearing, but the relevant period is from January 2012 through June 2013 and the vocational expert failed to provide job numbers for this period. (Doc. 20, p. 9-10). The Commissioner does not dispute this argument. (Doc. 22, p. 5). Instead, the Commissioner argues that the ALJ need not establish an exact number of jobs in the national economy that Plaintiff could perform, but only need establish that a significant number of jobs existed in the national economy during the relevant period. (Doc. 22, p. 5-6). The Commissioner also argues that the ALJ "could reasonably conclude that there would be a significant number of jobs available that Plaintiff could perform during this period." (Doc. 22, p. p. 6). The Court disagrees.

"At step five, an ALJ must ascertain whether [the] jobs [that a claimant can perform] exist[ ] in significant numbers in the national economy." *Viverette*, 13 F.4th 1309, 1318 (11th Cir. 2021) (quotations omitted) (citing *Biestek v. Berryhill*, 587 U.S. ___, 139 S. Ct. 1148, 1152 (2019)). Whether there are a significant number of jobs in the national economy is a factual issue to be determined by a judicial officer. *Id.* "Work which 'exists in the national economy' means 'work which exists in significant numbers either in the region where [the] individual lives or in several regions of the country.'" *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (citing 42 U.S.C. § 423(d)(2)(A)). The Social Security Administration approximates the number of positions that exist, whether vacant or filled, and

without regard to a claimant's likelihood of being hired. *Id.* (citations omitted). An ALJ may use a vocational expert or other specialist to assist in the step five determination. *Id.* Vocational experts may consult publications such as the DOT – even though it may be outdated – and may also consult other sources to obtain job numbers. *Id.*

At the hearing, the vocational expert testified that the marker job had approximately 226,000 jobs in the national economy, the routing clerk had 123,000 jobs in the national economy, and the router job had 31,000 jobs in the national economy. (Tr. 1221). Counsel asked: "Okay. And did you take into consideration how many jobs there might have been back between – back in 2012 and '13 or are you able to do that?" (Tr. 1226-27). The vocational expert responded: "No, ma'am, I based off of things going – job numbers from the past recent two years." (Tr. 1227).

While an ALJ may generally rely on the testimony of a vocational expert, that is not the case here. The vocational expert failed to provide accurate job numbers for the relevant period of January 2012 through June 2013 for the three listed jobs. When a vocational expert fails to testify as the job numbers from the relevant period, it is unclear whether this testimony is substantial evidence on which an ALJ may rely. *Hensley v. Colvin*, 89 F. Supp. 3d 1323, 1331 (M.D. Fla. 2015) ("It is not clear that the testimony at issue in the instant case constituted substantial evidence. Indeed, the expert himself voiced reservations regarding his ability to accurately assess the

number of jobs available to Plaintiff during the relevant period."); *see also Beard v. Comm'r of Soc. Sec.*, No. 6:19-cv-626-ORL-LRH, 2020 WL 3971831, at *5 (M.D. Fla. July 14, 2020). Further, the question of what constitutes a significant number of jobs "'is a question of fact to be determined by a judicial officer [i.e., the ALJ].'" *Viverette*, 13 F.4th 1309, 1318 (11th Cir. 2021) (citing *Martinez v. Heckler*, 807 F.2d 771, 775 (9th Cir. 1986) and *Brooks v. Barnhart*, 133 F. App'x 669, 670 (11th Cir. 2005)). Thus, remand is appropriate when additional fact-finding is needed. *Id.* The Court hesitates to make any factual determination about whether a significant number of jobs existed from January 2012 through June 2103 in the national economy. Remand is warranted on this issue.

### C.  Appeal Council's Remand

Lastly, Plaintiff argues that the ALJ did not follow the Order of the Appeals Council Remanding the Case to Administrative Law Judge, dated October 25, 2021. (Doc. 20, p. 10-12). Plaintiff contends that the Appeals Council's remand order directed the ALJ not to rely on evidence from the prior hearings, but the ALJ did in fact summarize a non-examining medical expert who testified at a prior hearing. (Doc. 20, p. 12-13). The Commissioner argues that the ALJ did not base the decision on this testimony, but simply considered it in a review of the evidence. The Court finds merit is Plaintiff's contention.

In the October 25, 2021 remand order, the Appeals Council discussed Plaintiff's challenge to the Appointments Clause of the Constitution, U.S. Art. II § 2, cl.2 as to the manner in which the Administrate Law Judge was appointed. (Tr. 1238). "In the most recent decision, the Administrative Law Judge relied on testimony from a prior hearing where the Administrative [Law Judge] had not been reappointed." (Tr. 1238). The Appeals Council then specifically stated, "[t]he different Administrative Law Judge should not rely on evidence from the prior hearings." (Tr. 1238). The ALJ quoted this language from the remand order in the decision. (Tr. 1146).

In the decision, however, the ALJ summarized Victoria Eskinazi, Ph.D.'s testimony as a medical expert from the 2020 hearing before a prior administrative law judge. (Tr. 1155). Then later in the decision, the ALJ gave "great weight" to Dr. Eskinazi's opinion about functional limitations. (Tr. 1162). The ALJ clearly considered and relied on this evidence in reaching a decision. Arguably, the ALJ did not follow the Appeals Council's remand order. Because this case is being remanded on other grounds, the Commissioner is directed to reconsider this issue as well.[3]

---

[3] Although not raised by Plaintiff, in the decision the ALJ also summarized Plaintiff's testimony from the prior 2020 hearing. (Tr. 1154). This summary also appears to disregard the Appeals Council's remand order.

### III. Conclusion

For the reasons discussed above, the decision of the Commissioner is **REVERSED and REMANDED** such that this action is remanded under sentence four of 42 U.S.C. § 405(g) for the Commissioner to reconsider the step five findings and follow the language of an Appeals Council's remand order. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate any motions and deadlines, and afterward close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on July 12, 2024.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties